IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDY MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 11-CV-444-GKF-TLW |
| v. | ) |
| | ) |
| JOHN CHRISTNER TRUCKING, LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the court is the Motion for Summary Judgment of plaintiff, Randy Murphy ("Murphy")[Dkt. #11] and the Motion for Summary Judgment of defendant, John Christner Trucking, LLC ("JCT") [Dkt. #13].

Murphy was employed as a nighttime extended coverage dispatcher and dispatcher supervisor by JCT from 1998 until December 25, 2010. In September 2010, he was diagnosed with deep vein thrombosis. He underwent angioplasty and subsequently had emergency surgery to insert a stent. During that time, he requested and used FMLA time off. JCT terminated his employment effective December 25, 2010, on the grounds that he had exhausted his FMLA leave.

Murphy sued JCT, asserting claims for (1) unlawful interference with leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and (3) wrongful discharge under Oklahoma's public policy as expressed in 25 O.S. § 1302. The parties filed cross motions for summary judgment as to all claims.

## I. Material Facts

In September 2010, JCT had about 200 total employees, with 100 or more at the Sapulpa location. [*Id.,* Ex. 16, Crowley Dep., 50:15-19; 51:9-23; Ex. 17, Loy Dep., 44:18-45:6].

Murphy's schedule was fixed at seven days on, seven days off, Monday through Sunday, and had been for more than four years prior to his taking FMLA; he was scheduled to work 84 hours a week during his work weeks. [*Id.,* Ex. 15, Randy Murphy Dep., 24:10-11; 54:11-15; 133:10-134:10; Ex. 16, Crowley Dep., 76:22-24; 79:2-21; 115:1-7; Ex. 17, Loy Dep., 37:2-38:5; 63:9-14. Murphy was paid weekly, including the weeks he was "off." [Dkt. #13, Ex. 1, Murphy Dep., 26:19-22]. He was qualified to perform his position at JCT. [*Id.,* ex. 17, Loy Dep., 165:21-155:3].

Murphy was also qualified as an eligible employee for FMLA benefits during his employment with JCT. [Dkt. #11, Ex. 17, Loy Dep., 60:12-18]. He was born April 25, 1959. [Dkt. #11, Ex., 15, Murphy Dep., 7:24-25].

Murphy took his initial FMLA medical leaving beginning on September 20, 2010, due to a venogram and angioplasty. [Dkt. #13, Ex. 1, Murphy Dep., 48:24-49:8; 50:4-17]. He was released by his doctor and returned to work on October 4, 2010. [*Id.,* Ex. 1, Murphy Dep., 54:20-25]. He went back out on FMLA leave beginning on October 25, 2010. [*Id.,* Murphy Dep., 55:11-16]. He never returned to work after that date. [*Id.,* Murphy Dep., 55:14-16].

JCT's employee handbook provides that employees eligible for FMLA leave are entitled to up to 12 weeks of job protected FMLA leave per year. [Dkt. #11, Ex. 1, Employee Handbook Excerpt, "Determining Leave Entitlement"]. Murphy acknowledged in his deposition that the handbook provides, "if an employee fails to return to work from FMLA leave or fails to request an extension of the FMLA leave, the employee may be considered to have abandoned his or her

job and it may be considered a voluntary termination of employment." [Dkt. #13, Ex. 1, Murphy Dep., 100:13-24]. Murphy received a copy of the 2006 JCT employee handbook, as acknowledged by his signature of receipt. [*Id.,* Ex. 1, Murphy Dep., 98:10-19].

JCT calculated Murphy's FMLA leave as follows: 12 hours per day times seven days per week equals 84 hours per week divided by two for an average of 42 hours per week; 42 hours per week times 12 weeks equals 504 hours. [Dkt. #13, Ex. 2, Loy Dep., 36:1-17]. JCT applied the FMLA leave time to weeks Murphy would ordinarily have been scheduled to be off work. [Dkt. #11, Ex. 17, Loy Dep., 38:13-23; 39:12-41:5; Ex. 1, Ex. 2].

According to JCT's calculations, Murphy's FMLA leave expired on December 26, 2010. [Dkt. #11, Ex. 17, Loy Dep., 23:3:8]. Murphy testified that Lori Loy, JCT human resources manager, advised him in a phone call on December 21, 2010, that he would be discharged from employment with JCT effective December 25, 2010,[1] due to the expiration of his FMLA leave. [Dkt. #11, Ex. 15, Murphy Dep., 146:9-14]. In a letter to Murphy dated December 22, 2010, Loy stated, in pertinent part:

> Your Family Medical Leave of Absence is scheduled to end on December 25, 2010.
>
> In accordance with our FMLA policy and as is permitted by FMLA regulation, we require all employees on leave to provide notice of their intent to return to work. This notice was mailed to you on October 28, 2010 along with your rights and responsibilities.
>
> Because you are unable to return to work at the end of your FMLA leave, your absence isn't covered under protections.

[*Id.,* Ex. 12, December 22, 2010 Letter from Loy to Murphy].

---

[1] JCT admits the reference to a December 25, 2010 end date for FMLA leave was erroneous but contends the mistake is not material to the issues in this lawsuit. The court concurs.

Murphy's FMLA leave expired on December 26, 2010. [*Id.*, Ex. 2, Loy Dep., 123:3-8]. His doctor did not release him to return to work until December 28, 2010. [*Id.*, Ex. 1, Murphy Dep., 76:6-9].

After Murphy went back on FMLA leave in October 2010, JCT hired Cannon Cole to work as an extended coverage night dispatcher. [Dkt. #11, Ex. 15, Murphy Dep., 63:4-64:23]. Cole was under the age of 40. [*Id.,* Ex. 17, Loy Dep., 154:6-20].

Murphy testified that the only reason JCT provided regarding his termination was that his time had run out on his FMLA leave. [*Id.,* Ex. 1, Murphy Dep., 106:1-7]. He stated he had no reason to believe that there was any other reason he was terminated by JCT. [*Id.,* 106:8-11]. Murphy was unsure whether Cannon Cole was hired as temporary help or to replace him. [*Id.,* 108:4-12].

## II. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1402 (10th Cir. 1997).

A party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact, but must support such assertions by citing to particular parts of the record, including depositions, documents, affidavits or other materials. Fed.R.Civ.P. 56(c)(1). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. *L & M Enters., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284, 1287 (10th Cir. 2000). [T]here is

no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

### III. Analysis

### A. FMLA Claim

FMLA allows qualified employees to take up to 12 weeks of leave during a 12-month period if "a serious health condition…makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Under the FMLA, it is unlawful "for any employer to interfere with, restrain, or deny the exercise of" rights provided by the FMLA. 29 U.S.C. § 2615(a)(1).

A prima facie claim for FLMA interference requires a showing that (1) plaintiff was entitled to FMLA leave; (2) some adverse action by the employer interfered with the employee's right to take FMLA leave; and (3) the employer's action was related to the exercise or attempted exercise of the employee's FMLA rights. *Metzler v. Federal Home Loan Bank of Topeka,* 464 F.3d 1164, 1180 (10th Cir. 2006). A denial, interference or restraint of FMLA rights is a violation regardless of the employer's intent. *Id.* The *McDonnell Douglas* burden-shifting analysis does not apply to interference claims. *Id.*

JCT has stipulated that Murphy was entitled to FMLA leave for a serious medical condition; thus the first element of Murphy's prima facie case is established. At issue is whether the second and third elements of the prima facie case have been met. This, in turn depends on whether JCT correctly calculated and applied Murphy's FMLA leave time. Murphy argues that since he ordinarily worked one week on/one week off, FMLA leave time should not have been

charged against weeks during which he would not have been scheduled to work. JCT counters that nothing in the FMLA statutes or implementing regulations prohibits it from applying FMLA leave time against weeks during which Murphy would ordinarily have been off duty.

Resolution of the issue is critical, because if Murphy's interpretation is correct, his 12 weeks FMLA leave time would not have expired December 26, 2010, as JCT asserts, but rather nearly 12 weeks after his December 28, 2010, release to return to work.

JCT asserts that pursuant to 29 U.S.C. § 2612(a)(1) and its implementing regulation, 29 C.F.R. § 825.200, it was permitted to—and did—choose one of four methods for calculating FMLA leave time. The statute provides in pertinent part:

> **(a) In general.** (1) Entitlement to leave. … [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following reasons:
>
> * * *
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1). The implementing regulation, 29 C.F.R. § 825.200, provides, in pertinent part:

> (a) …[A]n eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks of leave during any 12-month period …
>
> * * *
>
> (b) An employer is permitted to choose any one of the following methods for determining the "12-month period" in which the 12 weeks of leave entitlement described n paragraph (a) of this section occurs:
>
> (1) The calendar year;
>
> (2) Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary date;
>
> (3) The 12-month period measured forward from the date an employee's first FMLA leave under paragraph (a) begins; or,

6

> (4) A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave as described in paragraph (a).
>
> \* \* \*
>
> (d)(1) Employers will be allowed to choose any of the alternatives in paragraph (b) of this section for the leave entitlements described in paragraph (a) of this section provided the alternative chosen is applied consistently and uniformly to all employees.  An employer wishing to change to another alternative is required to give at least 60 days notice to all employees, and the transition must take place in such a way that the employees retain the full benefits of 12 weeks of leave under whichever method affords the greatest benefit to the employee.  Under no circumstances may a new method be implemented in order to avoid the Act's leave requirements.
>
> \* \* \*
>
> (h)  For purposes of determining the amount of leave used by an employee, the fact that a holiday may occur within the week taken as FMLA leave has no effect; the week is counted as a week of FMLA leave.  However, if an employee is using FMLA leave in increments of less than one week, the holiday will not count against the employee's FMLA entitlement unless the employee was otherwise scheduled and expected to work during the holiday.  Similarly, if for some reason the employer's business activity has temporarily ceased and employees generally are not expected to report for work for one or more weeks (*e.g.,* a school closing two weeks for the Christmas/New Year holiday or the summer vacation or an employer closing the plant for retooling or repairs), the days the employer's activities have ceased do *not* count against the employee's FMLA leave entitlement.  Methods for determining an employee's 12-week leave entitlement are also described in § 825.205.

29 C.F.R. § 825.200.

Section 2612(b) of the  FMLA addresses "leave taken intermittently or on a reduced leave schedule."[2] 19 U.S.C. § 2612(b).  Section 2612(b) explicitly states, "The taking of leave intermittently or on a reduced leave schedule pursuant to this paragraph shall not result in a reduction in the total amount of leave to which the employee is entitled under subsection (a) *beyond the amount of leave actually taken*." (emphasis added).  Implementing regulations related

---

[2] DOL regulations define "intermittent leave" as "FMLA leave taken in separate blocks of time due to a single qualifying reason," and  "reduced leave schedule" as "a change in the employees schedule for a period of time, normally from full-time to part-time."  29 C.F.R. § 825.202(a).

7

to § 2612(b) restrict employers from applying FMLA leave time to periods of time when the employee would ordinarily not be scheduled to work. *See* 29 C.F.R. §§ 825.205 and 825.601.

There is a dearth of case law on the question of whether the restrictions of 29 U.S.C. § 2612(b) and its implementing regulations apply to the calculation of leave under 29 U.S.C. § 2612(a)(1). It appears the sole reported decision on this issue is *Truitt v. Doyon Drilling, Inc.,* 764 F. Supp.2d 1167 (D. Alaska 2010). In *Truitt,* a mechanic who worked a rotational schedule of two weeks on, two weeks off, suffered from two serious medical conditions which caused him to be absent from work during separate periods of time. First, he sustained a foot infection that required him to be off work from January 23, 2006 until March 10, 2006. *Id.* at 1168. Subsequently, he suffered a heart attack and underwent emergency bypass surgery on June 23, 2006. As a result, he was absent from work beginning June 22, 2006, and was not medically cleared to resume work until October 2, 2006. *Id.* His employer terminated him on or about June 30, 2006, and denied his request to be reinstated as a mechanic on September 29, 2006. *Id.* The employer had calculated plaintiff's FMLA leave period by counting each calendar week that plaintiff was absent, regardless of whether he was scheduled to work. *Id.* at 1169. As a result, the employer counted the approximately two weeks per month that plaintiff was not scheduled to report for duty in reducing his FMLA leave time. Applying this calculation, defendant concluded plaintiff's available FMLA leave period expired before plaintiff was medically certified to return to work. *Id.* Plaintiff argued that in calculating FMLA leave time, defendant could only reduce his FMLA leave entitlement for those weeks that plaintiff was scheduled to report to work. *Id.*

The court in *Truitt* found that Congress had not "directly spoken to the precise question of how to calculate FMLA leave entitlement for a rotational employee," and thus the FMLA was

8

ambiguous or silent with respect to the issue at hand. *Id.* at 1169-70 (citation and quotation omitted). It concluded "any ambiguity in interpreting Section 2612(a)(1)(D) of the FMLA is dispelled by the preamble accompanying and explaining the regulation." *Id.* at 1170. Specifically, the court cited DOL's statements at 60 Fed.Reg. 2203 (1995) and 60 Fed.Reg. 2229 (1995).[3]

The court in *Truitt*—finding the preamble to contain the Department of Labor's official interpretation of the Act—held it must grant deference to the agency's interpretation unless it was arbitrary, capricious or manifestly contrary to the statute. *Id.* at 1170. It concluded DOL's interpretation is a permissible construction of the statute, and must be accorded deference. *Id.* at 1170-71. Therefore, it held the employer could not include off weeks in its calculation of FMLA leave time.

The court declines to follow *Truitt.* The Federal Register preamble language relied upon by the court in *Truitt* addressed regulations pertaining to intermittent and reduced leave referenced in 29 U.S.C. § 2612(b) and defined and regulated under 29 C.F.R. §§ 825.205 and 825.601. Neither Murphy nor—for that matter—the plaintiff in *Truitt* took intermittent or reduced leave pursuant to 29 U.S.C. § 2612(b). Rather, both took leave pursuant to 29 U.S.C. § 2612(a)(1).

---

[3] The court relied on two excerpts from the preamble. The first excerpt was taken from a section titled "Determining the Amount of Intermittent/Reduced Leave (§ 825.205)," and stated:

> An employee's FMLA leave entitlement may only be reduced for time which the employee would otherwise be required to report for duty, *but for the taking of the leave.* If the employee is not scheduled to report for work, the time period involved may not be counted as FMLA leave. See § 825.200(f).

60 Fed.Reg. 2203. Under 29 C.F.R. § 825.205, the "actual workweek is the basis of leave entitlement for intermittent or reduced schedule leave." The second excerpt was taken from a section titled "VI. Subpart F— Special Rules for Local Education Employees" with the subtitle "Limitations on Intermittent Leave or Leave on a Reduced Leave Schedule (§ 825.601)." It states, "An absence taken when the employee would not otherwise be required to report for duty is not leave." 60 Fed.Reg. 2229.

It is a cardinal doctrine of statutory construction that "in all enactments every choice of words [is presumed to be] purposeful, manifesting legislative intent to convey particular meaning, and that statutory use of different terms evinces intent to express different meanings." *Union of Needletrades, Indus. & Textile Employers, AFL-CIO, CLC v. U.S. I.N.S.,* 202 F.Supp.2d 265, 271 (S.D. N.Y. 2002) aff'd sub nom. *Union of Needletrades, Indus. & Textile Employees, AFL-CIO, CLC v. U.S. I.N.S.,* 336 F.3d 200 (2nd Cir. 2003), citing *Legacy Emanual Hosp. & Health Ctr. v. Shalala,* 97 F.3d 1261, 1265 (9th Cir. 1996) ("[T]he use of different language by Congress creates a presumption that it intended the terms to have different meanings."); *Washington Hosp. Ctr. v. Bowen,* 795 F.2d 139, 146 (D.C. Cir. 1986); 2A Norman Singer, Statutes and Statutory Construction § 46.06 (6th ed.2000) (noting that legislative "use of different terms within related statutes generally implies that different meanings were intended.")

Section 2612(a)(1) and its implementing regulation, 29 C.F.R. § 825.200, reference "workweeks," but make no mention of "the amount of leave actually taken" or the "actual workweek."[4] Applying the canons of construction, this court must—somewhat reluctantly—conclude the legislature's choice of language was deliberate. If Congress had intended to restrict the employer's application of FMLA leave time under § 2612(a)(1) to only those weeks during which rotational employees would actually be on duty, it would have included language similar to § 2612(b). It did not do so. The "actual workweek" language of § 2612(b) and 29 C.F.R. § 825.205 is not applicable to § 2612(a)(1).

---

[4] JCT suggests the reason for the distinction between § 2612(a)(1) § 2612(b) and implementing regulations is that under §2612(b), it is contemplated an employee will continue working, but not at the hours he normally works, and thus, the employer retains the benefit of having a full staff, but with less hours at work than normal. In contrast, §2612(a)(1) addresses scenarios in which it is contemplated an employee will be entirely absent from his place of employment, which means the employer is required to hold open a job until his return. JCT argues the legislature most likely did not require that a calculation of FMLA leave under § 2612(a)(1) be made pursuant to an "actual workweek" because of scenarios similar to this one. If JCT were required to apply FMLA leave only to plaintiff's "actual workweeks," it would have to hold plaintiff's job open for a total of six months. [Dkt. #16 at 9-10].

JCT's calculation and application of Murphy's leave time did not violate the FMLA. Therefore, it is entitled to summary judgment on Murphy's first cause of action.

### B. ADEA Claim

#### 1. Burden of Proof/Burden Shifting Process

The ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment *because of* such individual's age." *Jones v. Oklahoma City Public Schools,* 617 F.3d 1273, 1277 (citing 29 U.S.C. §623(a)(1)( emphasis in original). In 2009, the Supreme Court clarified the meaning of the phrase, "because of," as used in the ADEA, in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 129 S.Ct. 2343 (2009). The court held that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Id.* at 2350. Thus, in order to establish a claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* The Tenth Circuit, in the wake of *Gross,* has stated that it is "not the employer's burden to negate any possible contributor role played by age in the challenged adverse action but, conversely, the employee's burden to show that age was the 'but for' cause of the action. *Medlock v. United Parcel Serv., Inc.,* 608 F.3d 1185, 1193 (10th Cir. 2010).

In *Jones,* the court observed that the Tenth Circuit has long held that a plaintiff must prove "but for" causation to hold an employer liable under the ADEA, but "this causal standard does not require [plaintiffs] to show that age was the sole motivating factor in the employment decision." 617 F.3d at 1277. (quotations and citations omitted). "Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Id.* (quotations and citations omitted). "Accordingly,

11

*Gross* does not disturb long-standing Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action." *Id.* at 1278.

Under *McDonnell Douglas,* the plaintiff may avoid summary judgment by providing circumstantial rather than direct evidence of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).   To do so, plaintiff must first demonstrate a prima facie case of unlawful discrimination. *Id.* at 802.  If he succeeds at the first stage, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133,143 (2000).

In *Jones,* the Tenth Circuit held that *Gross* "has no logical effect on the application of *McDonnell Douglas* to age discrimination claims." 617 F.3d at 1279.  The court, quoting *Gross,* stated, "the burden of persuasion [n]ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA. *McDonnell Douglas*...does not shift the burden of persuasion from the plaintiff to the defendant.  Rather it shifts only the burden of production. Throughout the three-step process, the plaintiff...carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis." *Id.*

## 2. Application of *McDonnell Douglas* Burden Shifting Analysis

Murphy has presented no direct evidence of discrimination.  Therefore, the court must apply the burden shifting analysis set out in *McDonnell Douglas.*   To prove a prima facie case of age discrimination, a plaintiff must show:  (1) he is within the protected age group; (2) he was

12

doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person. *Rivera v. City & Cty. of Denver,* 365 F.3d 912, 920 (10th Cir. 2004).

Murphy is within the protected age group, performed his job satisfactorily, and was discharged. Murphy testified, however, he does not know whether Cannon Cole was hired as temporary help or to replace him. Thus, plaintiff has not met his burden of establishing a prima facie case of age discrimination. Moreover, even assuming Cole replaced Murphy, plaintiff's claim fails under the further burden shifting analysis required by *McDonnell Douglas.*

"Once the plaintiff has made out a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Pinkerton v. Colo. Dep't of Transp.,* 563 F.3d 1052, 1064 (10th Cir. 2009). The employer's burden is one of production, not persuasion. *Doubele v. Spring/United Management Company,* 342 F.3d 1117, 1135 (10th Cir. 2003). JCT has introduced evidence Murphy was discharged because he had exhausted his FMLA leave and had not been released to return to work. This constitutes a legitimate, nondiscriminatory reason.

Once the employer has articulated a legitimate reason for the adverse employment action, plaintiff must demonstrate that the employer's asserted reasons are pretextual. *Pinkerton v. Colo. Dept of Transp.,* 563 F.3d 1052, 1064 (10th Cir. 2009). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact find could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations and citations omitted). It is not enough, however, that a factfinder could disagree with the employer's assessments of an employee' skills and abilities. *Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1138 (10th Cir. 2004). The relevant inquiry also is not whether

13

the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith on those beliefs. *Id.* Consequently, in order to show pretext, the plaintiff must call into question the honesty or good faith of the employer. *Exum,* 389 F.3d at 1137.

Plaintiff has not met this burden. Murphy himself has testified the *sole* reason for his discharge from employment was expiration of his FMLA leave, as calculated by JCT. [Dkt. #11, Ex. 15, Murphy Dep., 106:1-11]. He has presented *no* evidence the termination was based on his age.

JCT is entitled to summary judgment on Murphy's second cause of action for age discrimination.

### C. State Public Policy *Burk* Tort Claim

Murphy alleges he was discriminated against in violation of Oklahoma's public policy as expressed in the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. § 1302 and *Burk v. K-Mart,* 770 P.2d 24 (Okla. 1989).

Similar to the ADEA and Title VII, the OADA makes it unlawful to "fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to the terms, conditions, privileges or responsibilities of employment…because of race, color, religion, sex, national origin, age, or handicap…" 25 O.S. § 1302. Murphy's claim for violation of the OADA fails for the same reasons his ADEA claim fails. *See* Section III.B. above.

JCT is entitled to summary judgment on his OADA/*Burk* tort claim.

### IV. Conclusion

For the foregoing reasons, plaintiff's Motion for Summary Judgment [Dkt. #11] is denied. Defendant's Motion for Summary Judgment [Dkt. #13] is granted.

ENTERED this 15th day of August, 2012.

                                              GREGORY K. FRIZZELL, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT